CHARLES W. WARREN *v.* AMOS WARREN, JOHN PETTES, OLIVER P. CHANDLER AND GEORGE R. CHAPMAN.

[IN CHANCERY.]

*Mortgage.　Chancery.*

One who levies on the equity of redemption of a mortgagor, and pays off mortgages to which his levy is subject, becomes, by such payment, the assignee in equity of the mortgages, and is entitled to all the rights of the mortgagees in the premises.

A defendant in chancery, when he makes his defence by way of answer, must set up all the various grounds of defence upon which he intends to rely.

When one holds security on two funds, with perfect liberty to resort to either for his pay, and another party has security upon only one of the same funds, equity will compel the former to exhaust the fund upon which he alone has the security, before taking any part of the other, and thereby depriving the other party of his security; and a party will be sometimes compelled to follow this principle without the direct interposition of the court in advance.

APPEAL by the orator from the decree of the court of chancery dismissing his bill. The facts of the case are sufficiently disclosed in the opinion of the court.

———————— for the orator.

*Washburn & Marsh,* for the defendants.

The opinion of the court was delivered by

POLAND, J. The orator's bill is brought to foreclose a mortgage executed by Amos Warren to Amos W. Warren, on the 13th of January, 1843, to indemnify the mortgagee against a note signed by him with the mortgagor, for one thousand dollars, to Hugh Henry, which mortgage was assigned to the orator in 1851.

The defendant Chandler claims the premises covered by the mortgage, by virtue of a levy and set off of the equity of redemption of Amos Warren, upon an execution in favor of John Pettes, in 1852, of which he was the owner, and by subsequent conveyance from Pettes, and also by virtue of two mortgages upon said premises, to which his levy was made subject, and which he was compelled to

redeem, in order to obtain the premises. One of these was a mortgage from Amos Warren to George R. Chapman, executed in March, 1843, on which the defendant paid in June, 1854, the sum of one thousand nine hundred and thirty-two dollars and thirty-five cents. The other, a mortgage executed by Amos Warren to Levi Brown, in March, 1846, on which the defendant paid in December, 1852, the sum of eleven hundred and fifteen dollars and thirty-eight cents.

By thus paying off these mortgages, the defendant Chandler became in equity, the ass'gnee of them, and entitled to claim and hold any right which the mortgagees had in the premises, and to set up any defence to a prior mortgage, which such mortgagees might have. The mortgage from Amos Warren to Amos W., which the orator seeks to foreclose, was prior in point of time to either of the several titles of the defendant, and, if a valid, subsisting mortgage, must of course override all these junior claims upon the property.

The debt upon which the equity of redemption was set off by the defendant, was one which existed prior to the date of the orator's mortgage, and the defendant now claims that this mortgage was executed for the fraudulent purpose of covering up and concealing the property of Amos Warren from his creditors, and hindering and preventing them from collecting their debts, and that as the defendant represents a debt existing at that time, the mortgage was as to him, fraudulent and void.

Much of the evidence in the case, and much of the argument, has been devoted to that question, but whether the defendant's claim in this respect is well or ill founded, we think it can not prevail, because it has not been properly brought into the case. The answer of the defendant sets up no defence of this sort, and no principle of chancery pleading is better settled, than that the defendant, when he makes his defence by way of answer, must set up all the various grounds of defence, upon which he intends to rely.

The defence that is made by the answer is, that in January, 1842, Amos Warren made an assignment of a large amount of personal property to Amos W. Warren, in consideration of which Amos W. assumed to pay certain debts of the said Amos, among which was the same debt to Hugh Henry, which the orator's mortgage was afterwards made to secure ; that said Amos W. sold and

disposed of the property assigned to him, to a greater amount than the Henry debt, and all those that stood prior to it, in the order of the assignment; and that he did actually pay the note to Henry with the avails of the assigned property, so that in effect, the mortgage debt was paid by Amos Warren himself, and Amos W. Warren was never damnified by signing said note to Henry.

The issue made by the traverse of this answer, presents the real question to be decided in the case, which is, whether the Henry debt was paid by funds furnished for that purpose by Amos Warren, as between himself and Amos W., and if not so, as between them, whether the defendant stands in any relation to the parties or the property, that would entitle him to have it so treated.

It is conceded, that in January, 1842, Amos Warren made an assignment of a large amount of personal property to Amos W., which was received by him and which, as valued by the parties at the time, amounted to the sum of five thousand four hundred and fifty-eight dollars and fifty cents, out of which Amos W. was to be paid about one thousand dollars due from Amos to him, and the balance, or at least, the avails of the balance, he agreed to pay in satisfaction of certain debts of Amos Warren, in all of about the same amount as the valuation of the property assigned. The debt to Henry was one of the debts which Amos W. thus agreed to pay, and was the second debt on the schedule, and they were to be extinguished in the order of that schedule, by the terms of that assignment.

It is conceded that Amos W. sold and disposed of this property, and though the net proceeds were not equal to the valuation in the assignment, still they were more than sufficient to pay his own debt, and also the Henry debt, and all prior to it in the schedule of trust debts, which he was to pay out of the property. It is conceded that the debt to Henry was actually paid with moneys derived from the sales of the assigned property, but it is claimed by the orator, that it was not paid under the assignment, but by virtue of a different arrangement, and that he subsequently paid out the full proceeds of the assigned property upon other debts, named subsequently in the assignment, and some that were not named in the assignment at all.

The assignment, in a suit in favor of Britnell, a creditor of

Amos Warren, was declared inoperative and void, as to the creditors of Warren, but it was a valid and binding contract as between the parties, and Amos Warren had the right to require the assigned property to be applied in payment of the debts, in the order of priority, named in the assignment.

He might however vary this arrangement by agreement with Amos W. Warren, the assignee, to pay the debts in a different order from that named in the assignment, or to pay debts not named in the assignment at all, and no one could complain of this except the creditors named under the assignment, or persons having some interest in the property or funds assigned, or other property affected by the application of the funds under the assignment.

The defendant claims that as the debt upon which his set off was made, was a debt existing when this assignment was made, he has the right to have it held as a fraudulent and void assignment here, as was decided in the Britnell suit. But though this defendant or Pettes, was then a creditor and might have interfered, and laid hold of the assigned property, he did not see fit to do so, and we think as he did not, and did not choose to interfere with the assigned property, and was not a creditor named in the assignment, he cannot come in now and claim any benefit upon the ground that the assignment was fraudulent, or that the assigned property was disposed of differently from the order of the assignment.

Being a creditor at that time, he would have a right to require that Amos W. Warren should account for all the property that he received, and if he had funds or property in his hands, that had never been applied to the extinguishment of any of the just debts of Amos Warren, the defendant might claim that they should be applied to extinguish any claim that Amos W. himself might have even though Amos Warren could not by reason of its being found fraudulent.

But it seems not to be seriously claimed but that Amos W. Warren has really paid out upon valid debts against Amos Warren, an amount equal to the whole of the net proceeds of the assigned property, so that the defendant can claim nothing merely because he was a creditor at the time of the assignment.

Neither is the defendant, by virtue of having become the owner

of the Britnell judgment, entitled to claim anything in relation to the priority of payments under the assignment, or against the orator's mortgage, for the reason that Britnell was not an assignment creditor, and because he claims no right or interest in the mortgaged premises on account of that debt.

The defendant has succeeded to all the rights of Amos Warren, and of the two mortgagees, whose mortgages he has paid, so far as they had any right to claim that the orator's mortgage was, or in equity should have been, satisfied or extinguished, by the property assigned to Amos W. Warren.

By the terms of the assignment, Amos W. Warren had expressly bound himself to pay the Henry debt out of the assigned property, if enough was realized out of it to pay that debt, and those having priority over it.   Enough was realized to pay this in its order, and Amos Warren had the right to require the funds to be so applied, unless he assented to a different application.

There is no evidence of any express understanding or agreement between Amos Warren and Amos W., that the proceeds of the assigned property should be paid to other creditors subsequent to Henry, and not upon the Henry debt.   The only ground upon which such a claim could be supported is, that Amos W. did go on and pay the subsequent debts, and some not named in the assignment at all, and this appears to have been known to Amos Warren, and there is no evidence that he found fault with or dissented from the payment so made.   But when the payment was made by Amos W. to Henry, out of the assignment funds, there is not the slightest evidence that it was not intended by him, and also so understood by his father Amos Warren, to be a payment and extinguishment of that debt, under the provisions of the assignment, and that it operated to discharge the mortgage to Amos W. to indemnify him for signing the note.   And it does not appear to furnish a sufficient ground for finding an agreement between them, that Amos W. Warren, with the assent of his father, subsequently paid debts that, by the terms of the assignment, he would not have been bound to pay ; and if when Amos W., paid the debt to Henry, it was intended and understood to be a satisfaction of that debt, under the provisions of the assignment, and so operated to discharge

the mortgage to him, nothing short of an express and explicit agreement to that effect could revive it even as against Amos Warren himself, and such an agreement we think can hardly be found upon the evidence in the case.

But however that might be as to Amos Warren, we think that Chapman, (who had acquired an interest in the premises mortgaged, long before the debt to Henry was paid by Amos W., and before any very large amount had been paid out by Amos W.) had the right to claim, that the property assigned should be applied according to the terms of the assignment, to extinguish the Henry debt. The mortgage to Chapman was given to secure him for paying the first debt named in the assignment to the Bank of Woodstock, and he had actually paid a considerable part of that debt before Amos W. paid the debt to Henry. There is no pretence but that Amos W. had full notice of this mortgage to Chapman, and of the fact that he was paying up the debt to the bank, as it was the first debt he himself contracted to pay in the assignment, and clearly it would be most inequitable for him to divert the funds in his hands to pay the subsequent debts and keep the Henry debt on foot, and set it up against Chapman as a prior encumbrance upon the only security Chapman had, and having notice of Chapman's condition, we think that even if Amos Warren agreed that he might keep the Henry debt on foot, and also the mortgage to secure it, it would not hold good against Chapman, unless he assented to it, and there is no evidence that he did.

When one man holds security on two funds, with perfect liberty to resort to either for his pay, and another party has security upon only one of the same funds, equity will compel the first to exhaust the fund upon which he alone has the security, before taking any part of the other, and thereby depriving the other party of his security. And this principle is founded upon so plain an equity, that parties will sometimes be compelled to follow it, without the direct interposition of the power of the court in advance, and especially when the party was bound by contract to do so.

We conclude then, that the defendant, standing on the right of Chapman, may well resist the claims set up under the orator's mortgage.

It is said that Henry declined to come in under the assignment,

and therefore lost his right of priority, and even lost all claim to be paid under the assignment. There is no evidence that he declined to come in under the assignment, except that he sued and enforced collection of his debt. This was perhaps sufficient to have prevented him from making any claim upon the assignee, or the funds in his hands, under the assignment, as an assignment creditor, but that had no influence upon the contract between Amos W. Warren and his father, or Chapman; so far as they were concerned, they had the right to require that Amos W. should devote the funds, he had, to pay the Henry debt. Henry seems to have had no objection to the assignment, for he was in the end paid by the assignee out of the assigned funds. We are the better satisfied that when the Henry debt was paid, it was understood to be a full satisfaction and extinguishment of the debt, and the mortgage to Amos W. to secure it, from the long time that elapsed, from the time it was paid, before any attempt was made to enforce the mortgage, or any claim set up under it. Had it been understood to be a subsisting security, we can hardly believe it would have slumbered so quietly for so long a time, and the attempt to set it up and enforce it immediately upon the levy on Amos Warren's equity of redemption, by the defendant, creates a strong suspicion that but for this attempt to take the property to satisfy a debt against Amos Warren, the mortgage would never have been attempted to be enforced.

We are all well satisfied with the decree of the chancellor, dismissing the orator's bill, and the decree of the chancellor is affirmed, with additional costs in this court, and the cause is remanded to have the decree enforced.