Lamb et als. *v.* Mason.

———

## LAMB AND OTHERS *v.* MASON.

### [IN CHANCERY.]

*Homestead. Mortgage. Subrogation.*

L. attached M's premises on a cause of action not enforceable against the homestead. The premises were then subject to a mortgage that covered the homestead, and to another attachment, wherein execution was subsequently levied on the premises, a homestead set out, and the mortgage apportioned between the homestead and the residue of the premises. L. obtained judgment, and levied his execution on the whole premises, in disregard of M's homestead right therein, and subject only to the mortgage. Subsequently L. and another who was equitably interested in his judgment, paid the whole mortgage in order to save their rights under their levy. *Held*, that the homestead should bear its proportion of the mortgage debt; that by thus paying the mortgage, the parties became subrogated to the rights of the mortgagee, and could enforce against the homestead the payment of its proportion of the mortgage debt. Ross and DUNTON, JJ., dissenting.

44

APPEAL from the Court of Chancery.

The bill alleged that at the May Term, 1868, of the Windsor County Court, the orator Allen J. Lamb brought an action against the defendant Charles S. Mason and the orator George S. Guernsey on their four promissory notes to said Lamb, and therein caused to be attached as the property of said Mason a building in Ludlow, the lower story of which was used as a dry goods store, and the upper story of which was used by said Mason as a dwelling, together with about a quarter of an acre of land thereto belonging; that said premises were then under attachment in an action brought by Charles V. Poor and Augustus Town, and also subject to a mortgage owned by Josiah Gilson, whereon there was then due about $800; that at said term said Poor and Town obtained judgment for $190.30 damages, and $37.32 costs, whereon execution was duly issued, and, on August 21, duly levied on said premises; that said Mason then claimed a homestead therein, whereupon a part of the upper story of said building was set out to him with privilege of ingress and egress, &c.; that said mortgage then amounted to $822, of which $105.39 was justly chargeble on said homestead; that at the then next December Term of said court, said Lamb obtained judgment in his suit for $4,004 damages, and $33.64 costs, upon which execution was issued and levied on said premises on April 1, 1869; that the said Lamb claimed that said Mason was not entitled to a homestead in said premises, but that the entire premises were subject to his execution, and that the appraisers appointed to set off said premises on said execution, disregarding said Mason's right of homestead and the levy of said Poor and Town for that reason, appraised the whole premises at $3,400, computed said mortgage at $863.10, appraised the premises subject to said mortgage at $2,636.90, and set off the entire premises to said Lamb, subject only to said mortgage, at said sum of $2,636.90, in part satisfaction of his execution. The bill further alleged, that the orator Almira Guernsey was then, and at the time of the bringing of the action on said notes, the wife of said George S.; that three of said notes were the sole and separate property of the said Almira, and held in trust for her by said Lamb; that she was the owner in equity of the greater share of the judgment thereon; and that execution was levied for the benefit of the said Lamb and said Almira, in protection to their respective interests therein; that on October 14, 1872, said Lamb and said Almira, to protect their interest in said premises, were compelled to and did pay the amount of said mortgage, which was about $1,050. The bill further alleged, that

Lamb et als. *v.* Mason.

litigation ensued between said Mason and said Lamb and said Almira, as to whether said Mason was entitled to a homestead in said premises ; that it was finally decided that he was so entitled ; that therefore he was so entitled, but that the homestead was chargeable with the payment of its just proportion of said mortgage, which, at the time said homestead was set out as aforesaid, was $105.39 ; that it was the duty of said Mason to have paid the same, and so have relieved the orators Lamb and said Almira of the burden thereof ; but that he neglected and refused so to do, and refused to pay any part of the money thus advanced by said Lamb and said Almira to remove said mortgage ; that said Lamb and said Almira, by paying the portion of said mortgage that was chargeable on said homestead, became subrogated in equity to the rights of said Gilson therein. *Prayer*, that the orators be subrogated to the rights of said Gilson in the portion of said mortgage that was chargeable on said homestead ; that said Mason be ordered and decreed to repay the amount chargeable thereon, and which the said Lamb and Almira had paid as aforesaid, or be foreclosed ; and for general relief.

The anwer admitted the bringing of suit by said Lamb and said Poor and Town, the incumbrance by mortgage to said Gilson, the obtaining of judgments in said suits, and the levying of execution and setting off thereunder, as alleged, but denied that any portion of said mortgage was legally or equitably chargeable on said homestead at the time of the levy first alleged, and alleged that the attempt of the officer who made said levy so to charge it was illegal and void.

The answer further alleged that defendant purchased the premises in question for the sum of $600, and took a deed thereof, on January 5, 1856 ; that on February 28 then next, he left the deed for record, and that subsequently, in the same year, he borrowed a sum of money of said Gilson and executed said mortgage to him as security therefor, his wife not signing ; that at the time of said purchase, said Mason owned another house that he occupied as a homestead, but that he purchased the premises in question for the purpose of making a homestead therein, and that in 1864 he sold the other house, and with more than $500 of the avails thereof, and with other funds and the labor of himself and his family, made additions to the premises in question, greatly increasing the value thereof; that afterwards, on November 23, 1866, for the purpose of paying said Gilson and obtaining money for legitimate purposes, defendant conveyed the premises in question to said Gilson, subject to his homestead right therein, and that said Gilson took possession thereof ; that after

said levies were made, said Lamb and said Almira brought a bill against said Gilson, the defendant, and said George S., to set aside the deed to said Gilson, and to redeem said premises from said mortgage, whereupon, in May 1872, said deed was held to be invalid, and a decree rendered that the orators therein be allowed to redeem said premises, which they accordingly did; that the court at the same time held that if the defendant had a homestead right in said premises at the time of the levy of said Lamb, he had it still, and left the question of whether he had such right as against said levy, to be determined by proceedings instituted for that purpose; and that afterwards said Lamb, to determine said right, brought ejectment against defendant, wherein, in February, 1873, it was finally adjudged that he had such right; and insisted that the orators were concluded and barred by said decree and judgment, and that said Lamb and said Almira were not subrogated to the rights of said Gilson. The answer also alleged, that for a long time before and at said attachment, and thence to the time of answering, the defendant occupied said premises as his homestead.

At the May Term, 1875, Windsor County, the cause was heard on bill and answer, when the court, BARRETT, Chancellor, rendered a decree that the defendant pay the sum of $105.39, with interest from August 21, 1868, or be foreclosed. Appeal by the defendant.

*Walker & Goddard,* for the defendant.

*J. J. Wilson,* for the orators.

The opinion of the court was delivered by

POWERS, J. The Homestead Act, Gen. Sts. c. 68, declares in s. 1, that " the homestead of every housekeeper or head of a family, consisting of a dwelling-house, outbuildings, and the land used in connection therewith, not exceeding five hundred dollars in value, and used or kept by such housekeeper or head of a family as such homestead, shall, together with the rents, issues, profits, and products thereof, be exempt from attachment and execution, except as hereinafter provided." Sec. 2 provides that when an execution is levied upon the real estate of which such homestead may be a part, or upon such part of such homestead as may

be in excess of the value thereof created in s. 1, the housekeeper or head of a family shall have the right to designate and choose the part thereof to which the exemption shall apply, not exceeding the limited value ; and upon such designation and choice, or in case of a refusal to designate or choose, the appraisers on such levy shall fix the location and boundaries of such homestead to the amount of five hundred dollars in value, and shall then proceed with the levy of such execution upon the residue of such real estate, as in other cases. Section 3 provides that in case such homestead or real estate is encumbered by mortgage at the time of any such levy of execution, the value and location of such homestead shall be fixed as provided in s. 2, and thereupon such levy shall proceed in the same manner as in the case of mortgages existing upon distinct parcels of land. Section 7 provides that such homestead shall be liable to attachment and levy of execution upon all causes of action existing at the time of acquiring such homestead, which time is declared to be the time the deed of the land in which the right exists is filed for record in the town clerk's office. A subsequent section forbids the alienation of the homestead by the owner, if a married man, except by way of mortgage to secure the purchase-money. All debts, then, existing against the claimant of the exemption before he acquires the homestead, and the debt contracted for its purchase, are left enforceable against the estate, the same as though no homestead act had ever been passed.

The question raised in this case may be stated hypothetically thus : M conveys to H an estate composed of White Acre and Black Acre lying together as one property. H, at the time of the conveyance, pays one half the purchase-money, and executes his notes secured by a mortgage upon the whole property, to secure the balance of the purchase-money. C, a creditor of H, whose debt is contracted after H's purchase, obtains a judgment upon his debt, and levies his execution upon the land pursuant to the statute. In making the levy, H chooses White Acre as his homestead, and the appraisers value it at five hundred dollars, and set it off to H by metes and bounds as his homestead, and set off Black Acre to C. Subsequently C is compelled to pay off the

whole of M's outstanding mortgage. Can C compel the homestead to contribute to the payment of M's mortgage? We think he can.

It is quite true that the Homestead Act is to have a liberal construction, to effectuate its purpose to provide a home for the family of debtors; but at the same time it is to be remembered that it is in derogation of the general policy of the law, which subjects the property of debtors to the just claims of their creditors; and it is to have operation and effect so far and so far only as the Legisislature has determined. The act does not confer a title to the land upon the homesteader. His title, or tenure, is that conferred by his grantor. But the act impresses upon the use and possession of the estate a quality and character that fortifies it against the assaults of certain creditors, and makes it inalienable by the homsteader in the usual way.

The underlying title to the land is left open to such subjection to the paramount right of the original vendor as vests in him by the general law; and if his lien is evidenced by a mortgage executed at the time of the conveyance, it could not be devested by legislative action. *Gunn* v. *Berry*, 15 Wall. 610.

In considering the claims of anterior creditors and the creditor to whom the purchase-money is due, it is a wrong use of language to call the estate a *homestead*. *No homestead exists against such claims;* but the estate, like other attachable property, may be seized by such creditors without let or hindrance. In the case supposed, M, the mortgagee, holds the notes of H. and the mortgage security in addition, to secure the payment of the purchase-money. He can, without doubt, sell or assign the notes and mortgage for value, and the assignee would succeed to all his rights as against any claimed homestead right in H. *Pratt* v. *Bank of Bennington*, 10 Vt. 293; *Keyes* v. *Wood*, 21 Vt. 331. M might bring his action at law on his notes, and subject the estate to his judgment as a privileged debt. It has been held in sister States, that a third person, paying the vendor the purchase-money of the homestead estate at the homesteader's request, and after he is in possession, upon a promise of the homesteader to secure such payment by a mortgage of the homestead,—may, upon the home-

steader's refusal to execute such mortgage, enforce his lien upon the land, against which the defendant could not assert a homestead exemption. *Magee* v. *Magee*, 51 Ill. 500 ; *Austin* v. *Underwood*, 37 Ill. 438 ; *Lassen* v. *Vance*, 8 Cal. 271 ; *Carr* v. *Caldwell*, 10 Cal. 385. So, if there be an agreement between the vendor and purchaser that the purchase-money shall be paid to a third person, no homestead exemption can be asserted against such assignee. *Pinchain* v. *Collard*, 13 Texas, 333 ; *Hamrick* v. *People's Bank*, 54 Ga. 52.

An attaching creditor of land encumbered by a mortgage, is entitled to redeem the land from such mortgage ; and if he thereby pays a debt that another party should pay, it is equivalent to a request from such other party to make the payment. Such creditor, in equity, stands as an assignee of the mortgage debt, and is entitled to keep the debt on foot, with its securities, against the party obligated to pay it. " One who levies on the equity of redemption of a mortgagor and pays off mortgages to which his levy is subject, becomes, by such payment, the assignee in equity of the mortgages, and is entitled to all the rights of the mortgagees in the premises." *Warren* v. *Warren*, 30 Vt. 530 ; 20 Vt. 388 ; 20 Vt. 403.

In the case supposed, Black Acre, levied upon by C, was chargeable in common with White Acre, with the burden of M's mortgage. The levy had the effect to sever the equity of redemption into two parts ; but after the severance, White Acre and Black Acre sustained the same relative relation to the mortgage debt as before. The doctrine of the case of *Lyman* v. *Lyman*, 32 Vt. 79, that where there are successive conveyances at different times of parts of an equity of redemption, the purchasers must redeem in the inverse order of their conveyances, does not apply to the case. The set-off of the homestead, and the set-off of Black Acre on the execution, are simultaneous acts, resulting from the same proceeding, and the burden of M's mortgage is not, as between H and C, shifted. It presents the not unusual case of a burden resting upon two distinct parcels of land ; and in such cases, equity compels each parcel to its just contribution towards the

discharge of the common burden.    *Stevens* v. *Cooper*, 1 Johns. Ch. 425 ; Adams Eq. (6 Am. Ed.) 543.

Section 3 of the Homestead Act declares that in case the estate in which the homestead exemption exists is encumbered by an outstanding mortgage, the boundaries of the homestead shall be fixed, and the levy shall then proceed  as in cases of mortgages resting upon distinct parcels of land.    We have no statute defining the procedure in levying executions upon distinct parcels of land encumbered by a common mortgage ; but it is clear that the levying creditor is entitled to take the interest of his debtor in each parcel, and that interest is each parcel, charged with its proper share of the mortgage debt.    The creditor could not take one parcel and compel the burden of the mortgage upon the other. Here the law says to C, you shall not levy upon White Acre— that parcel shall be kept for the family home of H.    But the law goes no further.    It does not declare that C shall not only be restricted to Black Acre, burdened with its equitable share of M's debt, but in addition thereto it shall be burdened with H's share of the same debt. ' Such a construction practically declares that not only shall White Acre be exempt from levy, but if it happens to be unpaid for, C must furnish the money to give H an indefeasible title to the land in which the homestead is claimed, thus practically saying that Black Acre also is to be exempt.

The evident purpose of the Legislature was, to leave each distinct parcel to stand as the creditor finds it ; otherwise there is little sense in directing a procedure as in case of a mortgage upon " parcels " instead of a " parcel " of land.    All the provisions of the act indicate the purpose of the Legislature to restrict the homestead right to a *specific part* of the real estate not exceeding the limited value.

It is not to be understood, however, that the existence of an indefeasible title to the land as against everybody, upon which the exemption may be superimposed, is essential, to vest the right in the homesteader.    It has been held otherwise.    *Morgan* v. *Stearns*, 41 Vt. 398 ; *Doane* v. *Doane*, 46 Vt. 485.    As against junior creditors, *any* title that could be taken on execution is an

indefeasible title. But the vendor's lien sustains an entirely different relation to the estate. No exemption does or can attach to the homestead in favor of the occupant against the lien of the vendor when enforced by any person acquiring it by lawful means. The homestead in the case supposed is not, before its bounds are fixed, an undivided interest or estate in White Acre and Black Acre viewed as one common property. It is an *unsevered part* of the common property, the general outline and location of which is as well known and designated before as after its appraisal and location in the mode pointed out in the statute. It can only be selected and located in that part of the property covered by the buildings, and cannot be selected in isolated lands not used therewith. *True* v. *Morrill*, 28 Vt. 674. The residue of the common property is left by the act wholly unaffected by the creation of the exemption. Creditors may deal with the homesteader upon the faith that all his interest in the residue is available for their security.

In the case supposed, the payment of half the purchase-money was a payment *pro tanto* of the price of Black Acre as well as of that of the homestead, and the mortgage for the balance was made by the homesteader himself a common incumbrance upon both parcels. There is little justice now in his attempt to give his deed a different operation.

This view of the act makes no inroads upon the protection which the Legislature intended to throw around the family home of debtors. The creditor only gets in satisfaction of his debt, the interest of his debtor in Black Acre ; *his* debt is *satisfied* by his levy upon that parcel, and cannot be, directly nor indirectly, enforced against White Acre. When C pays M's debt that H, by contract, is personally obliged to pay, he pays, not as a volunteer, but by compulsion ; he pays, not because he is a creditor seeking to enforce his own debt, but as a surety forced to pay another man's debt, for the payment of which his land is pledged. Such involuntary payment by a surety never, in equity, extinguishes the debt, but keeps it on foot in favor of the surety against his principal, and subrogates the surety to all the securities held by the payee. C, then, in compelling the homestead to contribute,

is enforcing *M's debt*, against which, as we have seen, no homestead right can be asserted.

C may enforce M's debt in the same manner that M could, and hence may proceed by a foreclosure of the mortgage, to compel the homestead to discharge M's debt in the proportion which its value bears to that of the whole property.

The decree of the Court of Chancery was in accordance with this view, and the same is affirmed, and the cause remanded.

Ross, J., dissenting. I am unable to concur in the decision of this case, and have thought the question involved of sufficient practical importance to demand an expression of my views. The question for consideration is, whether a homestead which exists in an equity of redemption can be charged with its proportionate share of the mortgage in favor of a levying creditor whose debt is of that character that it cannot be levied on the homestead. The homestead exemption has been held to be humane in its character and policy, and as applying to all cases which come fairly within the spirit and equity of the statute establishing it. *True* v. *Estate of Morrill*, 28 Vt. 672 ; *McClary* v. *Bixby*, 36 Vt. 254. A full homestead of the value of five hundred dollars exists in premises occupied as such of which the occupant is seised of an undivided half as tenant in common. *McClary* v. *Bixby*, *supra.* In the language of KELLOGG, J. : " The homestead right is a right to be set out of the estate of the husband or head of a family, and is treated as an exemption of so much of his estate as is included within it, for the benefit of his widow and minor children after his decease. It does not become a fixed and definite estate in the land until it is ascertained and set out. Before it is ascertained and set out, it is nothing more than a contingent or inchoate right—a conditional lien or incumbrance upon the title or estate of the husband in favor of his wife and minor children. *Howe* v. *Adams*, 28 Vt. 541 ; *Davis & Wife* v. *Andrews*, 30 Vt. 678. We think that it was intended by the statute that the lien or incumbrance of the homestead right should be attached to and limited by the interest of the husband in the common property, or, in other words, that it should be attached, not to the land, but

to his estate in the land ; and that his widow and minor children are entitled to a full homestead right in his moiety or share in the common property." The same doctrine was held in *Danforth* v. *Beattie*, 43 Vt. 138, with the addition that each tenant in common who occupied the premises for a homestead, there being two dwelling-houses upon the common premises, was entitled to a full homestead. A full homestead right exists in favor of a housekeeper or head of a family, in the equity of redemption of premises occupied as a homestead. *Morgan* v. *Stearns*, 41 Vt. 398. The doctrine of these decisions is, that the homestead right attaches to and exists, not in that specific and limited portion of the premises which may be set out to the occupying housekeeper or head of a family, when it becomes necessary to sever the homestead from the remainder of the premises, but in the estate of such housekeeper or head of a family in the entire premises, whether it be the whole estate, or an undivided interest, or an equity of redemption ; and if such housekeeper or head of a family has an estate in such premises of the value of five hundred dollars, he is entitled to a full homestead right therein as against levying creditors who have no right to take the homestead in satisfaction of their debts. Nor are these decisions in this respect repugnant to the provisions of the statute relative to the homestead. While s. 1, c. 68, Gen. Sts., gives to every housekeeper or head of a family using and keeping premises as such, a homestead not exceeding five hundred dollars in value, exempt from attachment and levy of execution, sections 2 and 3 provide that in case of a levy of execution on the remainder of the premises, a full homestead right shall first be set out by metes and bounds, and then if the premises are encumbered by a mortgage, the " levy shall proceed in the same manner as in the case of mortgages existing upon distinct parcels of land." The statute has prescribed no method of procedure in the levy of an execution on one of two distinct parcels of land covered by the same mortgage. The levying creditor in such a case, I think, can only take the right of the debtor in such parcel ; that as between the mortgagor and mortgagee, the mortgagor must pay the whole mortgage before he can obtain its discharge from any portion of the mortgaged prem-

ises ; that the mortgagee would have the right to hold the whole of each distinct parcel for the payment of his whole mortgage debt. I suppose these propositions will not be questioned. How then, in the absence of any statutory provisions governing the subject, can the levying creditor take more than the right of the mortgagor in such distinct parcel ? Does he not step into the rights of the mortgagor, and must he not make his levy subject to the entire mortgage debt ? Suppose the distinct parcels of land covered by the mortgage are located, one in the town of Stannard and the other in the town of Bennington. The creditor levies his execution on the parcel in Stannard. By s. 19, c. 47, Gen. Sts., the appraisers must be three judicious freeholders residing in the town of Stannard. They are to appraise the parcel " at its true and just value in money " (sec. 21), and if subject to a mortgage, they are " to state the mortgage and the sums due and growing due on such mortgage." (Sec. 34.) There is no provision by which the appraisers from Stannard can appraise the parcel in Bennington, and apportion the mortgage between the two. Sec. 19 requires that the appraisers for the parcel in Bennington shall reside in that town. Can the appraisers on their oath do otherwise than state that the whole mortgage is on the parcel in Stannard ? I know of no other way of legally making the levy required by sec. 3 of the Homestead Act. The levying creditor, by the first section of the act, is debarred from levying on the homestead while it remains an equity of redemption, as decided in *Morgan* v. *Stearns, supra.* Was it not the intention of the act that he should be just as much debarred after the homestead is set out by metes and bounds as when resting in the whole equity of redemption ? I think that in levying on the other portion of the premises not set out as homestead, the creditor can only take the mortgagor's rights, which is what remains after the mortgage is fully paid ; in other words, that he must assume the payment of the entire mortgage debt. Any other construction would not only trench upon the mortgagee's rights, but render, in part at least, the provisions of s. 9, c. 68, nugatory. That section enables a housekeeper or head of a family having a homestead, to dispose of it, and invest the proceeds in a new home-

Lamb et als. *v.* Mason.

stead, and to hold the latter exempt from attachment and levy of execution to the same extent the first one was. Suppose A now owns free from incumbrance and occupies as a homestead, premises of just five hundred dollars value. He also owes a debt of $250. His creditor cannot obtain one dollar's interest in his homestead so long as it remains unchanged. To-morrow he exchanges this homestead for a new one of the value of $1000, giving back a mortgage for $500 to secure the payment of so much of the purchase-money. It is entirely evident that it is the intention of section 9 to enable him to hold the new homestead with the same immunity from attachment and levy of execution by his creditor that he did his first homestead. But if the creditor, in making an attachment and levy of his execution, can crowd half the mortgage over upon the homestead when set out by metes and bounds, he can secure and obtain payment of his entire debt, but he thereby diminishes the value of A's homestead just one half. Such a construction of sec. 3 in certain cases works a practical repeal of sec. 9, as well as overrules the decisions heretofore cited, holding that the homestead right attaches to and exists in the estate of the housekeeper or head of a family in the entire premises used and kept by him as a homestead, and not in the specific portion of the same which may be set out as a homestead when it became necessary to sever the same from the remainder of the premises. Section 13 of the Homestead Act, which, under certain conditions named, provides for the sale of the premises in which the homestead right exists on the petition of a levying creditor, secures to the owner of the homestead the payment of $500, the full value of the homestead right. Section 10 of the Homestead Act renders the mortgage of the homestead by the husband, except for the purchase-money, inoperative, unless also executed by the wife; and No. 17 of the Acts of 1865, provides that such execution by the wife " shall have no other effect than to bar her right or claim to such homestead as against such mortgage." To my mind, all the provisions of the statute relating to the homestead, as well as the prior decisions of this court construing the same, are only consistent with awarding to the owner of the homestead right, whether existing in the fee or

some lesser estate in the premises, a full homestead of the value of $500 whenever his interest in the homestead premises is of that value. Again, it is the manifest intention of the statute that every housekeeper or head of a family occupying premises as a homestead, should have his homestead right therein, whatever may be the kind of his estate in the premises, protected to the same extent against attachment and levy of execution, and, conversely, that the creditors of every such person should have the same and an equal right to secure and enforce payment of their debts against his homestead right, whether existing in the fee or equity of redemption of the premises occupied.

The decision of the court in the case at bar, to my mind, practically repeals the various provisions of the statute, as well as the former decisions of this court which I have cited. Let us put the doctrine held to a practical test. Six housekeepers or heads of families, A, B, C, D, E, and F, each possess $500, and invest it in the purchase of premises, and occupy them as homesteads. A purchases premises of the value of $500, B of $1000, C of $2000, D of $3000, E of $4000, F of $5000. The last five respectively give back a mortgage for the balance of the purchase-money, and each subsequently contracts a debt of $500. Under the doctrine held by the court in this case, A can hold his homestead free from attachment and levy of execution, and his creditor is remediless ; B can hold $250 of his, and his creditor can take the other $250 ; C can hold $125 of his, and his creditor can take the other $375 ; D can hold $83⅓ of his, and his creditor can take the other $416⅔ ; E can hold $62½ of his, and his creditor can take the other $437½ ; F can hold $50 of his, and his creditor can take the other $450. I cannot yield my assent to a construction of the provisions of the Homestead Act which, in its practical application, makes the execution of a mortgage of the premises in which the right exists, whether by the husband to secure part of the purchase-money, or by the husband and wife to secure some other debt, a yielding of a part of the same to the creditors of such husband, against the plain provisions of the first section of the act, and of the act of 1865, and which makes the homestead right when existing in an equity of redemption of the value

of $500 or more, instead of the constant and fixed value of $500 as required, of a variable and fluctuating value, dependent upon the ratio which the value of the whole premises in which the right exists bears to the mortgage. I cannot but think that where a construction of a statute works such manifestly inequitable and unintentional results, it may safely be pronounced erroneous, and the reasoning by which it is attempted to be maintained, fallacious. The fallacy of the decision, to my mind, lies in assuming that because the orator has redeemed a mortgage which the mortgagee could have enforced against the homestead, therefore he is entitled to be subrogated to all the rights which the mortgagee had, and may also enforce it against the homestead.

I do not think that it follows that a person who is so related to the premises that he is entitled to redeem a mortgage, is therefore entitled to be subrogated to all the rights of the mortgagee in enforcing the mortgage. Whether a mortgage will be kept on foot, and to what extent, in the hands of a party who has redeemed it, is determined by the equities which attach to the mortgage in the hands of the redeeming party. Suppose premises are subject to a first and a second mortgage, and a creditor levies on the equity of redemption, and is obliged to redeem the first mortgage to prevent a foreclosure, ordinarily, equity will not keep the first mortgage on foot in the hands of such redeeming party against the second mortgage, but treat his redemption of the first mortgage a payment thereof, the same as if the payment had been made by the mortgagor. So if A, being the owner of 100 acres of land, mortgages it, and then sells B the north half, on B's agreement to pay off the entire mortgage, when B has even been compelled to pay the mortgage to save his half of the premises from foreclosure, equity will not keep the mortgage on foot in his hands, subrogate B to the rights of the mortgagee, and allow B to compel A to pay him the whole or one half the mortgage debt, or lose his half of the premises, and simply because B had no right to enforce the mortgage against A's half of the premises. If in such case A should pay off the mortgage to save his half of the premises from being foreclosed, equity would keep the mort-

GENERAL TERM,

gage alive in his hands, and allow him to enforce it in full against B's half of the premises.

Again, A, being the owner of 100 acres of land, places it under a mortgage, and conveys by deed of warranty the north half to B ; C, being a creditor of A's, levies on the south half. Can there be any doubt but C must take the south half, burdened with the whole mortgage, and that, if he is compelled to pay the whole mortgage to save a foreclosure of his half, he cannot hold and set it up against B's half of the premises ? I think not; and manifestly because it would be inequitable to allow him to do so, inasmuch as he would have against B only such rights as A would have had. If C can enforce the mortgage against B's half under such a state of facts, a levying creditor has greater equities than a purchaser for value.

In the case at bar, the orator has no right to take the defendant's homestead on his debts, by which alone he becomes interested in the premises. When, therefore, he compels by his levy on the equity of redemption the severance, and, so to speak, the concentration of the homestead interest, which theretofore had existed in the equity of redemption of the whole premises, into a given and circumscribed portion of the same, I think he acquires no equitable rights against the severed and specific homestead that he did not have when the homestead interest existed in the whole equity of redemption ; and as he could not touch that interest when existing in the whole equity of redemption, he may not touch it now that it is severed and concentrated into a specific portion of the premises. As before the severance he could only take what remained of the premises after satisfying the mortgage and homestead interest, so now that the homestead interest is severed, he may not touch only what remains of the balance of the equity of redemption after satisfying the mortgage and homestead. Hence, by redeeming the mortgage, he only lifts the burden that, as between him and the defendant, it was his duty to lift ; and it would, as I think, be inequitable, as well as work a practical repeal of the statute, and annul, in effect, the decisions cited heretofore made by this court, to allow him to set up

and enforce any portion of the mortgage against the defendant's severed homestead. I should reverse the decree of the Court of Chancery, and remand the case, with a mandate to dismiss the bill.

I am authorized to say that Judge DUNTON, though not a member of the court when the case was last heard, having examined it, concurs in the substance of the views I have expressed.